UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X

IYA DENNIS,

                Plaintiff,                    **REPORT AND RECOMMENDATION**
                                                                         **10 CV 973 (DLI)(LB)**

       -against-

DELTA AIR LINES, INC.,

                Defendant.

-------------------------------------------------------X

**BLOOM, United States Magistrate Judge:**

      Plaintiff Iya Dennis brings this civil action against defendant Delta Air Lines, Inc. pursuant to 42 U.S.C. § 1981, 49 U.S.C. §§ 1374 and 40127(a), and New York common law. Defendant moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. The Honorable Dora L. Irizarry referred defendant's motion to me for a Report and Recommendation pursuant to 28 U.S.C. § 636(b). For the following reasons, it is respectfully recommended that defendant's motion for summary judgment should be granted.

### BACKGROUND

      On July 2, 2009, plaintiff booked a Delta Air Lines flight from LaGuardia Airport in New York to Dallas-Ft. Worth International Airport through the website orbitz.com. (Docket entry 22-1, Rule 56.1 Statement of Material Facts in Supp. of Def.'s Mot. for Summ. J. ("Def.'s 56.1 Statement"), ¶ 1.[1]) The flight was plaintiff's first since immigrating to the United States.

---

[1] Rule 56.1 of the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York ("Local Rule 56.1") requires a party moving for summary judgment to submit "a separate, short and concise statement" of the allegedly undisputed material facts, set out in numbered paragraphs, on which the moving party relies in arguing that there is no genuine issue to be tried. See Local Rule 56.1(a); see also Gianullo v. City of New York, 322 F.3d 139, 140 (2d Cir. 2003); Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 72 (2d Cir. 2001). Defendant submits a statement of undisputed facts pursuant to Local Rule 56.1(a). (Def.'s 56.1 Statement.) Although plaintiff states in her opposition that a "Statement of Material Facts made pursuant to Rule 56.1 [has been] prepared as a separate document," there is no record of a Rule 56.1(b) counter-statement filed by

(Docket entry 22-12, Aff. of Pl. in Opp. ("Dennis Aff.") at Ex. 1 ("Pl.'s Depo."), p. 4.[2]) The flight included a connection and change of planes in Atlanta Hartsfield-Jackson Airport. (Id.) The contract of carriage for plaintiff's flight consisted of plaintiff's ticket, any applicable tariffs, and Delta's Domestic General Rules Tariff. (Id. at ¶ 17.) A copy of Delta's Domestic General Rules Tariff was available for public inspection at LaGuardia Airport on the day of plaintiff's flight. (Id. at ¶ 18.) When plaintiff purchased her ticket on orbitz.com, plaintiff was provided a link to Delta's Notice of Incorporated Terms of Contract. (Id. at ¶ 21.) The Notice stated that the flight is subject to incorporated terms and that such terms were available for inspection at the airport or ticket office. (Id.) Plaintiff agreed to Delta's terms and conditions when she finalized her purchase on orbitz.com. (Id. at ¶ 22.) The email sent to plaintiff confirming the purchase of her ticket also contained a link to the terms and conditions of the contract. (Id. at ¶ 23.)

On July 14, 2009, plaintiff flew from New York to Atlanta on the Delta flight. (Pl.'s Depo., p. 4.) At the Delta check-in counter at LaGuardia Airport, there were signs advising passengers of the existence of passenger tariffs and documents entitled "Ticket Notice" advising passengers of the incorporated conditions of carriage. (Def.'s 56.1 Statement, ¶¶ 25-26.) Upon arrival in Atlanta, plaintiff was first directed to the wrong gate, then had difficulty finding the correct gate, and finally had to run to catch her flight. (Pl.'s Depo., pp. 4-5.) Plaintiff arrived at the gate for her connecting flight to Dallas less than ten minutes before the scheduled departure time. (Def.'s 56.1 Statement, ¶ 2.) Ten minutes prior to the scheduled departure time, the seats of late-arriving passengers, including plaintiff, were released to passengers with non-confirmed

---

plaintiff. (Docket entry 22-16, Pl.'s Mem. of Law in Opp. to Mot. for Summ. J. ("Pl.'s Opp."), p. 7.) As such, the Court may deem the facts in defendant's Rule 56.1 statement admitted. See Local Rule 56.1(c). However, the Court may not rely solely on the statement of undisputed facts contained in the Rule 56.1 statement: "[i]t must be satisfied that the citation to the evidence in the record supports the assertion." Vt. Teddy Bear Co., Inc. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004); see Gianullo, 322 F.3d at 143 n.5. Therefore, the Court deems admitted only those facts in defendant's Rule 56.1 statement that are supported by admissible evidence and not controverted by the record.

[2] The Court references the ECF page numbers on the filed documents which appear on the header for each page.

seats who were waiting at the gate. (Id. at ¶ 3.) When plaintiff, who is a black female, arrived at the gate, two other passengers, both of them whites males, were ahead of her. (Id. at ¶¶ 5, 10.) Those passengers were given seats on the plane by the gate agent, who is also a black female.[3] (Id. at ¶¶ 6, 11.) According to defendant, when the gate agent informed plaintiff that the flight was full and that plaintiff would be re-booked on the next flight to Dallas, plaintiff pushed the gate agent out of the way and proceeded down the jetway. (Martinez Aff. at Ex. B, pp. 28, 33.) Plaintiff claims that the gate agent did not give her any reason for denying her boarding and that plaintiff walked down the jetway to find someone to complain to. (Pl.'s Depo., pp. 5-6.) Plaintiff accused the gate agent of refusing to allow her to board the flight because she is black. (Id. at p. 6; Def.'s 56.1 Statement, ¶ 10.)

After plaintiff walked down the jetway, the gate agent called the tower control coordinator to report the security breach and the Atlanta police came to the gate area. (Martinez Aff. at Ex. B, p. 38.) According to plaintiff, the flight attendant in the jetway told her that there was a seat for her on the plane. (Pl.'s Depo., p. 14.) When the gate agent went down the jetway after plaintiff, she explained to the flight attendant that plaintiff had breached security and did not have a seat on the flight. (Martinez Aff. at Ex. B, pp. 38-39.) The gate agent then returned to the gate with plaintiff. (Id. at p. 39.) When a Delta supervisor arrived at the gate, plaintiff was screaming and swearing. (Martinez Aff. at Ex. G.) Plaintiff denies any abusive behavior, but acknowledges that she had "teary eyes" and was upset. (Dennis Aff., ¶ 10; Pl.'s Depo., p. 8.) The supervisor informed plaintiff that Delta would cancel and refund the remainder of plaintiff's

---

[3] The deposition transcripts reflect a dispute as to whether two or three white passengers were allowed to board immediately before plaintiff. The gate agent testified that plaintiff arrived at the gate about ten steps behind two white passengers and that she boarded those passengers before attending to plaintiff. (Docket entry 22-3, Aff. of Louis R. Martinez in Supp. of Def.'s Mot. for Summ. J. ("Martinez Aff.") at Ex. B, pp. 21-23, 28.) Plaintiff testified that three white passengers ran with her to the gate, that she overtook one of them while running, and that she let the third white passenger board before her as a courtesy. (Pl.'s Depo., p. 5; Martinez Aff. at Ex. C, p. 42.) However, either way, it is undisputed that the gate agent attended to plaintiff *after* the late-arriving white passengers and that she was the only late-arriving passenger not allowed to board.

ticket due to the security breach and plaintiff's behavior. (Def.'s 56.1 Statement, ¶ 14.) Defendant credited the balance of plaintiff's ticket to her credit card. (Id. at ¶ 15.) Plaintiff traveled to Dallas on an American Airlines flight on July 14, 2009 and arrived three hours after her original Delta flight was scheduled to arrive. (Id. at ¶ 16.) Plaintiff retrieved her luggage from defendant when she arrived in Dallas. (Pl.'s Depo., p. 11.)

The parties dispute whether the flight was full when plaintiff was denied boarding. The flight had a capacity of 183 passengers. (Def.'s 56.1 Statement, ¶ 28.) The gate agent and the flight attendant testified that the flight was filled to capacity. (Martinez Aff. at Ex. B, p. 30; Dennis Aff. at Ex. 2, p. 28.) The Weight and Data Record for the flight also reflects that 183 passengers were on board. (Def.'s 56.1 Statement, ¶ 28; Martinez Aff. at Ex. O.) The Weight and Data Record is produced contemporaneously and reviewed by the pilot prior to departure to determine how many passengers and crew are on board the flight. (Docket entry 22-17, Reply Aff. of Louis R. Martinez in Further Supp. of Def.'s Mot. for Summ. J. ("Martinez Reply Aff.") at Ex. R, ¶¶ 4, 5.) Two other documents, the passenger manifest and the printout of the scanned check-in times, account for only 180 passengers on the flight. (Id. at ¶ 9.) Defendant's Manager for Passenger Claims states that the passenger manifest and the printout of the scanned check-in times do not contain the passengers assigned to seats 1A, 1D, and 4B; one of those passengers did not check-in in Atlanta because he was already on board and remained on the plane during the lay-over, and the other two passengers were upgraded passengers not accounted for due to an error caused by the upgrade process. (Id.)

Plaintiff commenced this action on March 4, 2010. (Docket entry 1.) Defendant answered the complaint on March 25, 2011. (Docket entry 3.) The parties conducted discovery.

Defendant now moves for summary judgment. (Docket Entry 22.) Plaintiff opposes the motion and defendant has replied. (Docket Entries 22-10 and 22-16.)

## DISCUSSSION

### I. Standard of Review

Summary judgment should be granted where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it is one that "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "An issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 202 (2d Cir. 2007) (quoting Anderson, 477 U.S. at 248); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). "The trial court's function in deciding such a motion is not to weigh the evidence or resolve issues of fact, but to decide instead whether, after resolving all ambiguities and drawing all inferences in favor of the non-moving party, a rational juror could find in favor of that party." Pinto v. Allstate Ins. Co., 221 F.3d 394, 398 (2d Cir. 2000); see also Baker v. Home Depot, 445 F.3d 541, 543 (2d Cir. 2006) (resolving all ambiguities and drawing all inferences in favor of the non-moving party on summary judgment). For the purposes of defendant's motion for summary judgment, the facts here are viewed in the light most favorable to plaintiff.

The non-moving party must provide "affirmative evidence" from which a jury could return a verdict in its favor. Anderson, 477 U.S. at 257. "Conclusory allegations, conjecture, and speculation . . . are insufficient to create a genuine issue of fact." Niagara Mohawk Power Corp. v. Jones Chem., Inc., 315 F.3d 171, 175 (2d Cir. 2003) (quoting Kerzer v. Kingly Mfg.,

5

156 F.3d 396, 400 (2d Cir. 1998)). Moreover, "[t]he 'mere existence of a scintilla of evidence' supporting the non-movant's case is also insufficient to defeat summary judgment." Id. (quoting Anderson, 477 U.S. at 252).

## II. Breach of Contract Claim

Plaintiff claims that defendant breached its contract with her when it did not allow her to board the flight to Dallas and canceled the remainder of her ticket. The contract of carriage for plaintiff's flight consisted of plaintiff's ticket, any applicable tariffs, and Delta's Domestic General Rules Tariff. (Def.'s 56.1 Statement, ¶ 17.) Plaintiff argues that Delta's Domestic General Rules Tariff do not apply to the instant case because plaintiff did not receive adequate notice of the tariff. (Pl.'s Opp., pp. 10-14.) The Court disagrees. By making a copy of the Domestic General Rules Tariff available for public inspection at LaGuardia Airport, providing notice at the check-in counters advising passengers of the incorporated conditions of carriage, and providing notice when plaintiff purchased her ticket on orbitz.com, defendant complied with the federal regulations for incorporating terms into a contract of carriage. See 14 C.F.R. § 253.4, 253.5; Reed v. Delta Airlines, Inc., No. 10 Civ. 1053 (JGK), 2011 U.S. Dist. LEXIS 29872, at *8 (S.D.N.Y. Mar. 23, 2011) (airline complied with federal regulations for incorporating terms into the contract of carriage by making terms available for public inspection at the airport and providing passengers a "ticket notice" at check-in counters).

Rule 135 of the Domestic General Rules Tariff provides that "[r]eservations and seat assignments are subject to cancellation if the passenger is not . . . at the gate and ready for boarding" fifteen minutes prior to the scheduled departure. (Martinez Aff. at Ex. K, pp. 37-38.) Rule 35 of the Domestic General Rules Tariff provides that "Delta may refuse to transport or may remove passengers from its aircraft . . . [w]hen the passenger's conduct is disorderly,

6

abusive or violent." (Id. at pp. 19-20.) Plaintiff argues that she did not arrive at the gate too late to be boarded, did not breach security, and was not abusive or violent.[4] The instant record reflects that defendant released plaintiff's seat on the flight to another passenger because she arrived at the gate less than ten minutes before the scheduled departure of her flight. (Def.'s 56.1 Statement, ¶¶ 2-3.) The cancellation of plaintiff's reservation and seat assignment by defendant was therefore consistent with Rule 135 of the Domestic General Rules Tariff. When the gate agent did not allow plaintiff to board the flight, plaintiff responded by entering the jetway. (Martinez Aff. at Ex. B, p. 30; Pl.'s Depo., p. 6.) Because plaintiff entered the jetway without authorization, the station manager instructed the Delta supervisor to cancel and refund the remainder of plaintiff's ticket. (Martinez Aff. at Ex. G.) In doing so, defendant was within its rights under Rule 35 of the Domestic General Rules Tariff. Accordingly, defendant's actions did not breach the contract of carriage. See Reed, 2011 U.S. Dist. LEXIS 29872, at *9 (finding that airline did not breach the contract of carriage by preventing plaintiff from boarding her flight where plaintiff lacked the requisite travel documents).

Plaintiff's breach of contract claim also fails as a matter of law because plaintiff did not suffer any damages within the terms of her contract. "In 1995, the Supreme Court ruled

---

[4] Plaintiff also argues that defendant's motion should be denied because defendant engaged in spoliation of evidence by destroying the ticket lift envelope for plaintiff's flight, which she alleges would have shown the number of passengers who boarded the flight. (Pl.'s Opp., p. 20.) The ticket lift envelope reflects the number of passengers on a flight as well as the names of the passengers. (Dennis Aff. at Ex. 7, pp. 18-19; Ex. 3, p. 31.) "Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." West v. Goodyear Tire & Rubber Co., 167 F.3d 776, 779 (2d Cir. 1999). "There are three elements that a party moving for sanctions based on spoliation of evidence must establish: (1) the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) the records were destroyed with a culpable state of mind; and (3) the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." Liberman v. FedEx Ground Package Sys., No. 09 CV 2423 (RML), 2011 U.S. Dist. LEXIS 4401, at *7 (E.D.N.Y. Jan. 18, 2011) (citations omitted). Plaintiff has not established that defendant had an obligation to preserve the ticket lift envelope at the time it was destroyed. Defendant destroys ticket lift envelopes sixty days after a flight in accordance with its internal policy. (Docket entry 22-19, Reply Mem. of Law in Supp. of Def.'s Mot. for Summ. J. ("Def.'s Reply Mem."), p. 9.) Accordingly, the ticket lift envelope at issue here was destroyed months before plaintiff commenced this action. Moreover, plaintiff's statement on the date of the underlying event that she would bring defendant to court was insufficient to put defendant on notice that the ticket lift envelope was relevant to reasonably foreseeable litigation.

7

definitively that the [Airline Deregulation Act] confines plaintiffs claiming breach of contract to the terms of the parties' bargain, 'with no enlargement or enhancement based on state laws or policies external to the agreement.'" Ruta v. Delta Airlines, Inc., 322 F. Supp. 2d 391, 398 (S.D.N.Y. 2004) (quoting American Airlines, Inc. v. Wolens, 513 U.S. 219, 232-33 (1995)). Rule 35 of Domestic General Rules Tariff provides that "[t]he sole recourse of any passenger refused carriage or removed en-route for any reason specified in this Rule shall be recovery of the refund value of the unused portion of his or her ticket as provided in Rule 260." (Martinez Aff. at Ex. K, p. 22.) It is undisputed that defendant refunded plaintiff the full value of the unused portion of her ticket. (Def.'s 56.1 Statement, ¶ 15.) Therefore, under the terms of the contract of carriage, plaintiff could not have recovered any additional damages even if defendant had breached the contract. See Ruta, 322 F. Supp. 2d at 399 (granting summary judgment on plaintiff's breach of contract claim against the airline where "Plaintiff did not suffer any damages within the terms of her contract" because "there is no unused portion of the ticket, and Plaintiff is not entitled to any refund, which is the limit of Delta's contractual liability for removing her from the flight."); Norman v. Trans World Airlines, Inc., No. 98 Civ. 7419 (BSJ), 2000 U.S. Dist. LEXIS 14618, at *18 (S.D.N.Y. Oct. 5, 2000) (Plaintiff's "remedy for any breach of the contract of carriage between the parties is limited to the remedies set forth in that contract.").

Accordingly, defendant's motion for summary judgment should be granted on plaintiff's breach of contract claim.

### III. Discrimination Claim Pursuant to 42 U.S.C. § 1981

Plaintiff claims that defendant denied her contract rights because of her race. Section 1981 provides that "all persons . . . shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981. The right to make and enforce contracts

"includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b). "To establish a claim under § 1981, a plaintiff must allege facts in support of the following elements: (1) the plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerned one or more of the activities enumerated in the statute (i.e., make and enforce contracts, sue and be sued, give evidence, etc.)." Mian v. Donaldson, Lufkin & Jenrette Sec. Corp., 7 F.3d 1085, 1087 (2d Cir. 1993). The parties dispute whether plaintiff can demonstrate that defendant intentionally discriminated against her on the basis of race.

In Section 1981 claims where, as here, the evidence of discrimination is circumstantial, courts have employed the framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Bary v. Delta Airlines, Inc., No. CV-02-5202 (DGT), 2009 U.S. Dist. LEXIS 94797, at *27 (E.D.N.Y. Oct. 9, 2009) (applying McDonnell Douglas framework to airline passenger's claim under Section 1981); see also Lizardo v. Denny's, Inc., 270 F.3d 94, 103 (2d Cir. 2001). Under this framework, "the plaintiff bears the initial burden of establishing a prima facie case of discrimination." Holcomb v. Iona College, 521 F.3d 130, 138 (2d Cir. 2008). "The burden of establishing a prima facie case of alleged disparate treatment 'is not onerous.'" Id. (quoting Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981)). "Nevertheless, the plaintiff must still identify 'circumstances giving rise to an inference of discrimination on the basis' of race." Bary, 2009 U.S. Dist. LEXIS 94797, at *29 (quoting McLee v. Chrysler Corp., 109 F.3d 130, 134 (2d Cir. 1997)). Once a plaintiff establishes a prima facie case, "the burden shifts to the defendant to articulate 'some legitimate, non-discriminatory reason' for its action." Holcomb, 521 F.3d at 138 (quoting McDonnell Douglas Corp., 411 U.S.

at 802). "If such a reason is provided, plaintiff may no longer rely on the presumption raised by the prima facie case, but may still prevail by showing, without the benefit of the presumption, that the [defendant's] determination was in fact the result of racial discrimination." Id. "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." Burdine, 450 U.S. at 253; see Lizardo, 270 F.3d at 103 ("The court must examine the entire record to determine if plaintiffs meet their ultimate burden of persuading the fact-finder of a central element of a 1981 claim: namely, that defendants intentionally discriminated against them on the basis of their race.").

Even though plaintiff's burden at the prima facie stage is low, plaintiff has failed to demonstrate any inference of race-based discrimination. An inference of discrimination may arise "when [an] individual of one race [is] treated less favorably than those of another race who are similarly situated." Drayton v. Toys 'R' Us, Inc., 645 F. Supp. 2d 149, 159 (S.D.N.Y. 2009) (internal quotation marks and citations omitted). "When plaintiffs seek to draw inferences of discrimination by showing that they were similarly situated in all material respects to the individuals to whom they compare themselves, their circumstances need not be identical, but there should be a reasonably close resemblance of facts and circumstances." Lizardo, 270 F.3d at 101 (internal quotation marks and citations omitted). Plaintiff contends that she was similarly situated to the white passengers in front of her who the gate agent allowed to board the flight.[5] Plaintiff does not allege that there were any passengers who were allowed to board the flight after she was denied boarding. Although the white passengers who the gate agent allowed to board the flight also arrived late to the gate, the gate agent attended to them *before* plaintiff and

---

[5] Plaintiff testified that as she was approaching the gate, she saw three men running to the gate and started running with them, eventually overtaking one of them. (Pl.'s Depo., p. 5.) Plaintiff testified that when they all arrived to the gate, the gate agent allowed "the first one pass, the second one pass," and "because they were in front of me initially, so out of courtesy, I move for the third one to pass." (Id.) Plaintiff stated that "after he went in a minute later, a second later, I give her my ticket, a boarding pass," and [s]he said, no, you can't travel." (Id.)

the record demonstrates there were still seats on the flight when the gate agent allowed them to board. The gate agent testified at her deposition that:

> [a]t the ten-minute mark, it's first come, first serve. If she had reached me first, then she would have been on the plane in one of those two seats that I had. But as she did not reach me first, by the time I got to Ms. Dennis, I didn't have any seats for her.

(Martinez Aff. at Ex. B, p. 30.) The gate agent further testified that she "had already called in numbers to the load center and [she] knew that there were two more seats on the plane," and that she "had a seat map in front of [her] with two empty seats in it." (Id. at p. 37.) In contrast, plaintiff testified that when she went down into the jetway, the flight attendant told her that there was a seat for her on the plane. (Pl.'s Depo., p. 14.) The flight had a capacity of 183 passengers and the Weight and Data Record reflects that 183 passengers were on the flight. (Def.'s 56.1 Statement, ¶ 28.) The Weight and Data Record is produced contemporaneously and reviewed by the pilot prior to departure to determine how many passengers and crew are on board the flight. (Martinez Reply Aff. at Ex. R, ¶¶ 4, 5.) Upon review of the Weight and Data Record, the flight attendant who interacted with plaintiff on the jetway testified that the flight was filled to capacity.[6] (Dennis Aff. at Ex. 2, p. 28.) Defendant concedes that the passenger manifest and the printout of the scanned check-in times reflect that only 180 passengers were on the flight. (Martinez Reply Aff. at Ex. R, ¶ 9.) However, defendant's Manager for Passenger Claims states that the passenger manifest and the printout of the scanned check-in times do not contain the passengers assigned to seats 1A, 1D, and 4B; one of those passengers did not check-in in Atlanta because he remained on the plane during the lay-over, and the other two passengers were

---

[6] The portion of the flight attendant's deposition transcript attached to the instant motion does not reflect that the flight attendant told plaintiff that there was a seat for her on the flight. (Dennis Aff. at Ex. 2.) The flight attendant testified that she went over to plaintiff on the jetway to see if she could help her in any way and that plaintiff handed over her boarding papers which did not include a seat assignment. (Id. at pp. 18-19.) The flight attendant then testified that she spoke with the gate agent about plaintiff's seat assignment, who told her that plaintiff did not have a seat assignment, and based on that conversation, she did not board plaintiff on the flight. (Id. at pp. 19, 26.)

upgraded passengers not accounted for due to an error caused by the upgrade process. (Id.) Even when viewed in the light most favorable to plaintiff, the instant record presents no genuine dispute as to whether the flight was full when plaintiff sought to board the flight. As plaintiff has not introduced evidence from which a jury could conclude that she was similarly situated to the white passengers in front of her that the gate agent allowed to board the flight, plaintiff has failed to establish a prima facie case of discrimination. Cf. Bary, 2009 U.S. Dist. LEXIS 94797, at *30 (finding that airline passenger sufficiently demonstrated that he was similarly situated to "other white passengers on the plane [who] were carrying bags that were similar in size to his merchandise bag and that his bag met Delta's carry on size requirement.").

However, even if plaintiff were able to establish a prima facie case of discrimination by showing that she was similarly situated to the white passengers ahead of her who were allowed to board the flight, plaintiff's Section 1981 claim still could not withstand defendant's motion for summary judgment. Defendant has set forth a legitimate non-discriminatory reason for not allowing plaintiff to board the flight and plaintiff has failed to carry her ultimate burden of showing that defendant intentionally discriminated against her based on her race. As a legitimate non-discriminatory reason for its actions, defendant asserts that the gate agent did not allow plaintiff to board the flight because plaintiff arrived late to the gate and the flight was full when plaintiff sought to board the flight.

Plaintiff argues that defendant's reasons for denying her boarding are pretextual because they are inconsistent. Specifically, the gate agent testified at her deposition that plaintiff was prevented from boarding because the flight was full, while other evidence reflects that plaintiff was denied boarding because she arrived to the gate late. (Dennis Aff. at Ex. 7, p. 9; Ex. 3, pp. 3-4; Ex. 9, p. 29.) However, these reasons are not inconsistent. Plaintiff was denied boarding on

the flight because she arrived to the gate less than ten minutes before the scheduled departure time, her seat was released to a passenger with a non-confirmed seat who was waiting at the gate, and by the time the gate agent attended to her, there were no more seats available on the flight.

Plaintiff also argues that the reasons provided by defendant are pretextual because the passenger manifest and the printout of the scanned check-in times demonstrate that the flight was not full. (Pl.'s Opp., p. 34; Dennis Aff. at Ex. 4 and 5.) However, even if the discrepancy between the Weight and Data Record (reflecting 183 passengers on board) and the passenger manifest and the printout of the scanned check-in times (reflecting 180 passengers on board) had not been adequately explained by record evidence, plaintiff still fails to produce evidence to carry her ultimate burden of demonstrating that she was denied boarding because of her race. See Lizardo, 270 F.3d at 101 ("Evidence of pretext, however, even combined with the minimal showing necessary to establish a prima facie case under the burden-shifting scheme in McDonnell Douglas does not mandate a denial of summary judgment."). Apart from evidence regarding the number of passengers on the flight, plaintiff produces no evidence giving rise to an inference of racial discrimination. On these facts, a reasonable juror could not conclude that the gate agent prevented plaintiff from boarding the flight to Dallas because of her race.

Accordingly, defendant's motion for summary judgment should be granted on plaintiff's Section 1981 claim.

## IV. Discrimination Claim Pursuant to 49 U.S.C. §§ 1374 and 40127(a)

Plaintiff also claims that defendant discriminated against her on the basis of her race in violation of Section 404(b) of the Federal Aviation Act, 49 U.S.C. § 1374.[7] (Compl., ¶¶ 38-43.)

---

[7] Section 404(b) provides that "No carrier or foreign air carrier shall make, give, or cause any undue or unreasonable preference or advantage to any particular person, port, locality, or description of traffic in air transportation in any respect whatsoever or subject any particular person, port, locality, or description of traffic in air transportation to any

13

However, Congress repealed the relevant provision of Section 404(b) of the Federal Aviation Act in 1983 through the Airline Deregulation Act, Pub. L. No. 95-504, 92 Stat 1705. See Puckett v. Northwest Airlines, Inc., 131 F. Supp. 2d 379, 383 (E.D.N.Y. 2001) ("[A] claim for discrimination under the Federal Aviation Act is no longer available and thus a private right of action may not lie to enforce a non-existent statute."). Accordingly, plaintiff's claim under Section 404(b) of the Federal Aviation Act fails as a matter of law.

Congress enacted an anti-discrimination provision to replace Section 404(b) of the Federal Aviation Act in 2000. Pub. L. No. 106-181, § 706; 114 Stat. 61, 157-58 (2000). 49 U.S.C. § 40127(a) provides that "[a]n air carrier or foreign air carrier may not subject a person in air transportation to discrimination on the basis of race, color, national origin, religion, sex, or ancestry." Plaintiff does not cite to 49 U.S.C. § 40127(a) in the complaint. However, even if plaintiff did allege discrimination under 49 U.S.C. § 40127(a), this claim would fail as a matter of law because 49 U.S.C. § 40127(a) does not confer a private right of action. See Mutlu v. JetBlue Airways Corporation, No. 08 Civ. 4887 (LAP), 2009 U.S. Dist. LEXIS 60164, at *13 (Mar. 31, 2009) (granting airline's motion to dismiss on plaintiff's discrimination claim pursuant to 49 U.S.C. § 40127(a) because the statute does not confer a private right of action). Plaintiff provides no authority to the contrary.[8] Accordingly, defendant's motion for summary judgment should be granted on plaintiff's discrimination claim whether alleged under 49 U.S.C. § 1374, the repealed statute plaintiff relies on, or 49 U.S.C. § 40127(a).

---

unjust discrimination or any undue or unreasonable prejudice or disadvantage in any respect whatsoever." 49 U.S.C. § 1374(b) (1982) (repealed 1983).

[8] Plaintiff only argues that one of the cases cited by defendant, Elnajjar v. Northwest Airlines, No. Civ.A H-04-680, H-04-681, 2005 U.S. Dist. LEXIS 36792, at *11 (S.D. Tex. Aug. 15, 2005), is inapplicable because it "does not discuss any bar to private right of action." (Pl.'s Opp., p. 37.) However, the Court in Elnajjar clearly stated that "Plaintiffs fail to establish the existence of a private right of action for violations of 49 U.S.C. § . . . 40127." Elnajjar, 2005 U.S. Dist. LEXIS 36792, at *11.

## V. False Imprisonment Claim

Plaintiff claims that she was falsely imprisoned by police officers in the Atlanta airport and seeks to hold defendant liable for that confinement. "Under New York law, the elements of a false imprisonment claim are: (1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." Singer v. Fulton County Sheriff, 63 F.3d 110, 118 (2d Cir. 1995) (internal quotation marks and citation omitted). "In addition, [a] false imprisonment claim requires a prima facie showing of actual confinement or threatening conduct." Lipin v. Hunt, 538 F. Supp. 2d 590, 602 (S.D.N.Y. 2008) (internal quotation marks and citation omitted). "For false imprisonment liability to attach to one who causes or directs an arrest or imprisonment in New York, the defendant must have affirmatively induced the officer to act, such as taking an active part in the arrest and procuring it to be made or showing active, officious and undue zeal to the point where the officer is not acting of his own volition." Curley v. AMR Corp., 153 F.3d 5, 13-14 (2d Cir. 1998) (internal quotation marks and citation omitted).

Even assuming that the police officers confined plaintiff and that the confinement was not privileged, plaintiff's false imprisonment claim against defendant fails as a matter of law because plaintiff has not produced any evidence that the gate agent, the supervisor or any other Delta employee took an active part in the confinement or showed "undue zeal" in procuring plaintiff's confinement by the Atlanta police. The record reflects that after plaintiff entered the jetway, the gate agent called for security, and plaintiff was told that she could not board the plane. (Pl.'s Depo., pp. 6-7, 13-14.) The gate agent states that she alerted the tower control coordinator and police after plaintiff went down the jetway because "in these troubling times, one can never be too sure of a person's intentions." (Martinez Aff. at Ex. F.) In response to the

15

gate agent's call to the tower control coordinator, two Atlanta police officers were present when plaintiff exited the jetway. (Pl.'s Depo., p. 7; Martinez Aff. at Ex. B, p. 38.) The gate agent states that the police officers took plaintiff to the side of the gate area when plaintiff would not calm down. (Martinez Aff. at Ex. F.) One of the officers then took plaintiff into the middle of the hallway. (Id.) The police officers accompanied plaintiff and the supervisor to the Delta desk where the supervisor canceled plaintiff's ticket and refunded plaintiff's unused portion of the ticket. (Pl.'s Depo., pp. 8-9; Martinez Aff. at Ex. G.) At that point, plaintiff testified that "they now let [her] go and [she] walk[ed] to look for how to get out of that place." (Pl.'s Depo., p. 10.) As "[t]he mere reporting of a crime, and giving information to the police is not sufficient to impose liability," plaintiff's false imprisonment claim cannot survive defendant's motion for summary judgment. Curley v. American Airlines, No. 91 Civ. 2724 (WK), 1996 U.S. Dist. LEXIS 17096, at *4 (S.D.N.Y. Nov. 14, 1996) (granting summary judgment on plaintiff's false imprisonment claim against the airline); see Ginsberg v. American Airlines, No. 09 Civ. 3226 (LTS)(KNF), 2010 U.S. Dist. LEXIS 107688, at *14 (S.D.N.Y. Sept. 27, 2010) (granting summary judgment on plaintiff's false arrest claim against the airline).

Accordingly, defendant's motion for summary judgment should be granted on plaintiff's false imprisonment claim.

## VI. Intentional Infliction of Emotional Distress Claim

Plaintiff claims that defendant intentionally inflicted emotional distress upon her. To state a claim for intentional infliction of emotional distress under New York law, a plaintiff must show: "(1) extreme and outrageous conduct; (2) intent to cause, or reckless disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress." Stuto v. Fleishman, 164 F.3d 820,

827 (2d Cir. 1999). "[T]he standard for stating a valid claim of intentional infliction of emotional distress is rigorous, and difficult to satisfy." Conboy v. AT & T Corp., 241 F.3d 242, 258 (2d Cir. 2001) (citation omitted). "The conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." Id. (citation omitted). "The standard of outrageousness is an objective one; even if the defendant is aware of some peculiar susceptibility of the plaintiff to emotional distress, the conduct must still be objectively outrageous to be actionable." Netzer v. Continuity Graphic Assoc., Inc., 963 F. Supp. 1308, 1327 (S.D.N.Y. 1997).

In support of her claim for intentional infliction of emotional distress, plaintiff points to the following conduct: defendant did not allow plaintiff to board the flight; defendant did not return plaintiff's checked luggage to her in the twelve minutes between when the last passenger boarded and the flight departed; and defendant canceled the remainder of plaintiff's ticket. Plaintiff argues that these acts "are beyond all possible bounds of decency, atrocious, and intolerable." (Pl.'s Opp., p. 38.) Plaintiff testified at her deposition that she "was humiliated at the airport" and that she "was treated like a criminal." (Martinez Aff. at Ex. C, p. 43.) Plaintiff further testified that she had never flown in this country before. (Pl.'s Depo., p. 4.) While being bumped from a flight is aggravating and the Court understands plaintiff's distress at having her ticket canceled while on a lay-over, even when viewed in the light most favorable to plaintiff, the record does not demonstrate that defendant's conduct was sufficiently extreme and outrageous to give rise to an intentional infliction of emotional distress claim.

Accordingly, defendant's motion for summary judgment should be granted on plaintiff's intentional infliction of emotional distress claim.

## CONCLUSION

For the reasons set forth above, it is respectfully recommended that defendant's motion for summary judgment should be granted and plaintiff's complaint should be dismissed.[9]

## FILING OF OBJECTIONS TO REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections shall be filed with the Clerk of the Court. Any request for an extension of time to file objections must be made within the fourteen-day period. Failure to file a timely objection to this Report generally waives any further judicial review. Marcella v. Capital Dist. Physicians' Health Plan, Inc., 293 F.3d 42 (2d Cir. 2002); Small v. Sec'y of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989); see Thomas v. Arn, 474 U.S. 140 (1985).

SO ORDERED.

_____/S/_____
LOIS BLOOM
United States Magistrate Judge

Dated: August 18, 2011
       Brooklyn, New York

---

[9] Plaintiff seeks to hold defendant liable for special damages and punitive damages. (Compl., ¶¶ 54-68.) However, the Court need not address whether plaintiff would be entitled to such damages as it is recommended that all of plaintiff's claims should be dismissed.